IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ANGELA LEANNE CLINE,            )
                                )
                Plaintiff,      )
                                )
                                )  Case No. CIV-20-255-RAW-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
                Defendant.      )

## REPORT AND RECOMMENDATION

Plaintiff Angela Leanne Cline (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 42 years old at the time of the ALJ's decision. She has at least a high school education and past relevant work as a nursery school attendant, department manager, and a composite job of cashier and store laborer. Claimant alleges an inability to work beginning on January 1, 2016, due to limitations resulting from fractures in her back, migraines, depression, anxiety, tingling and sticks in the bottom of her feet, restless leg syndrome, hypertension, arthritis, and being pre-diabetic.

### Procedural History

On February 28, 2017, Claimant protectively filed an application for a period of disability and disability insurance

benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. She also protectively filed an application for supplemental security income benefits on January 26, 2018, pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Her applications were denied initially and upon reconsideration. On November 4, 2019, ALJ Lantz McClain conducted a video hearing from Tulsa, Oklahoma. Claimant participated in the hearing by video from Muskogee, Oklahoma. On November 15, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 26, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ (1) failed to properly consider all of her impairments at step two, and (2) erred in his step-five analysis.

## Step Two and Four Analysis

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, diabetes mellitus, hypertension, obesity, mood disorder, and anxiety disorder. (Tr. 17). He determined Claimant could perform light work with additional limitations. She could lift and/or carry twenty pounds occasionally and ten pounds frequently. Claimant could stand and/or walk for at least six hours in an eight-hour workday and sit for at least six hours in an eight-hour workday. She was able to perform simple, repetitive tasks and work requiring occasional interaction with the public. (Tr. 20).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of housekeeping cleaner and small products assembler, both of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant has not been under a disability from January 1, 2016, through the date of the decision. (Tr. 30).

Claimant first argues that the ALJ erred at step two because he failed to address several of her diagnoses, including those for major depression and/or major depressive disorder (recurrent, moderate), migraine headaches, and idiopathic peripheral neuropathy. She also asserts that the ALJ failed to account for these conditions in the RFC. She additionally argues that the ALJ

failed to consider the effect of her obesity, which he determined was a severe impairment at step two, on her idiopathic peripheral neuropathy.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000) (disability determinations turn on the functional consequences, not the causes of a claimant's condition). To the extent Claimant contends her diagnoses for depression, migraine headaches, and idiopathic peripheral neuropathy should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered

separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

Moreover, contrary to Claimant's contention, a review of the decision reveals that along with considering her severe impairments of degenerative disc disease, diabetes mellitus, hypertension, obesity, mood disorder, and anxiety disorder, impairments which significantly limited her ability to perform basic work activities (Tr. 17), the ALJ also considered her depression, migraine headaches, and idiopathic peripheral neuropathy when assessing the RFC.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96-8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the

individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). "When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). Moreover, a court cannot reweigh the evidence, as it reviews only the sufficiency of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

In his discussion of Claimant's RFC, the ALJ detailed Claimant's testimony (Tr. 21), her medical treatment (Tr. 22-28), and his consideration of the opinion evidence (Tr. 28-29). The ALJ

8

specifically considered Claimant's examination by Ashley Gourd, M.D., in January of 2016. On a depression screening, Claimant denied feeling down, depressed, or hopeless, and she was doing well on her medication. The ALJ noted that Dr. Gourd recorded Claimant's height and weight, resulting in a body mass index (BMI) of 31. Claimant had good movement of her extremities, which were negative for clubbing, cyanosis, and edema. Her mood was stable. Claimant had pain with lumbar flexion and extension, straightening of lumbar lordosis, and was tender to palpation over the lumbosacral spine. Her neurological examination was normal. Dr. Gourd assessed Claimant with low back pain and generalized anxiety disorder. (Tr. 22, 494-95).

He considered Claimant's treatment with Ashley Aldrich, M.D., in May of 2016. Claimant's depression screening was negative, and she was doing well on medication. The ALJ noted Dr. Aldrich recorded Claimant's BMI as 31. Claimant moved her extremities well, and her mood was stable. Although Claimant had pain with lumbar flexion/extension and tenderness over the lumbosacral spine, her motor strength was normal in the upper and lower extremities. She was assessed with low back pain and generalized anxiety disorder. (Tr. 22, 478-79). When Claimant returned to Dr. Aldrich in November of 2016, she recorded that Claimant's BMI remained 31, and she was doing well on her medication. Claimant had no new complaints of pain. Claimant requested an MRI for her migraine headaches,

indicating that she had experienced them for years, but she had never had any imaging. Claimant had normal ambulation, memory was normal, and mood and affect were normal. Claimant had normal tone and motor strength, but she had pain with lumbar flexion/extension and tenderness to palpation over lumbosacral spine. Her gait and station were normal, sensation was grossly intact, reflexes were 2+ bilaterally throughout, and coordination was normal. Claimant was assessed with low back pain, generalized anxiety disorder, and migraine (without aura). (Tr. 22, 463-65). Claimant was again seen by Dr. Aldrich in December of 2016. She had a BMI of 32, was doing well on medication with no adverse side effects, mood was stable, and she had no new complaints of pain. Claimant reported her blood pressure had been elevated. She ambulated normally, mood and effect were normal, and she had normal muscle tone and motor strength. Claimant had pain with lumbar flexion/extension and tenderness to palpation over the lumbosacral spine. She had normal gait and station. Sensation was intact, deep tendon reflexes were 2+ bilaterally, and her coordination was normal. Claimant was assessed with low back pain, generalized anxiety disorder, and essential hypertension. (Tr. 23, 459-62).

Claimant underwent an X ray of her lumbar spine in June of 2017. It revealed stable mild anterior wedge compression deformities of T11 and T12. There was mild multilevel spondylosis and loss of intervertebral disc height. The paravertebral soft

tissues were normal. (Tr. 23, 369). In July and August of 2017, Claimant was examined by Christopher Deloache, D.O., for right ankle and foot pain, but she also complained of chronic mid and low back pain. In July of 2017, Claimant denied numbness and tingling. She exhibited some mild edema on her right lower extremity, but it was comparable to the edema of the left lower extremity, and she had near full range of motion. Claimant was bearing full weight and had a smooth range of motion throughout her range of motion. She underwent an X ray of the thoracic spine, which revealed a mild scoliotic curve. Disc spaces were maintained and there was no acute bony pathology. (Tr. 23-24, 514, 516).

When Claimant returned to Dr. Deloache in August of 2017, she reported that her low back was "really acting up." Her exam demonstrated evidence of "intact motor function at the bilateral lower extremities to hip flexion, extension, abduction, adduction, quadriceps, hamstring stretching as well as gastric-soleus complex, tibialis anterior, tibialis posterior and EHL." She ambulated with full weight bear and no assistance. An X ray of Claimant's lumbar spine demonstrated evidence of early autofusion with anterior spurring at L2-L3 and T11-T12. Disc spaces were otherwise maintained, and there was no evidence of bony pathology or obvious acute trauma. Dr. Deloache referred Claimant for an MRI. (Tr. 24, 513, 515). Claimant underwent an MRI in September of 2017. It showed no significant central canal or neural foraminal

stenosis at T12-L1, L1-L2, L2-L3, and L3-L4. At L4-L5, the MRI revealed ligamentum flavum and facet hypertrophy. At L5-S1, it showed a broad-based disc bulge with an increased signal within the disc compatible with an annular tear. The soft tissues were normal and the impression was of mild spondylitic changes. (Tr. 24, 511-12).

In March of 2018, Claimant was referred for an EMG/Nerve Conduction Study based upon a six-month history of bilateral lower extremity burning, which was worse on the soles of the feet. The EMG showed no abnormality, indicating there was no electrodiagnostic evidence of significant neuropathy, myopathy, or motor radiculopathy of the bilateral lower extremities. (Tr. 24, 724-26).

Claimant underwent a psychological consultative examination with Kenny Paris, Ph.D., in April of 2018. Claimant reported some symptoms and feelings of depression, but she indicated they were not as bad as they had been in the past. Her anxiety was more of a concern. Although Claimant reported some problems with concentration and memory, Dr. Paris found her thoughts were organized, logical, and goal-directed, thought content was appropriate, and she was able to stay focused on the examination. Claimant mentioned suffering from migraine headaches since childhood, and she indicated they were treated with prescription medication. She was estimated to have an average IQ. Dr. Paris

assessed Claimant with generalized anxiety disorder (by history) and mood disorder NOS. He noted Claimant's memory skills during the examination appeared "somewhat impaired," but there were no significant problems with persistence and pace. He estimated that her ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was below average. Her judgment was deemed adequate, and Claimant could manage her own finances. Dr. Paris did not believe Claimant's condition would improve significantly in the next twelve months. (Tr. 24-25, 663-68).

Claimant underwent another MRI in June of 2018. No degenerative changes were noted at L1-L2 and L2-L3. At L3-L4, the disc appeared normal, but there was moderate ligamentum hypertrophy and mildly hypertrophied right and left facet joints. The L4-L5 disc appeared normal, except for severe ligamentum flavum hypertrophy, severely hypertrophied right and left facet joints, and mild right and left foraminal narrowing. At L5-S1, there was a broad-based disc bulge with a central posterior protrusion, moderately hypertrophied right and left facet joints, and mild right and left foraminal narrowing. (Tr. 25, 719-20).

Claimant was examined in July of 2018 by William Clark, M.D., for back and leg pain. She denied weakness, incoordination, loss of balance, radicular pain, sciatica, joint pain, joint swelling, muscle pain, limitation of motion, muscular weakness, muscle

cramps, and neck pain. She also denied headaches, anxiety, and depression. Upon examination, Claimant had "mildly" reduced range of motion in the lumbosacral spine with pain on flexion and extension and left paraspinal tenderness upon palpation. Her lower extremity strength was equal and symmetric, including motor strength to hip flexors, knee flexion, knee extension, dorsiflexion, plantar flexion, eversion, and extensor hallicus longus. Straight leg raise test and femoral stretch tests were negative bilaterally and Waddell signs and clonus were not present. Right and left lower extremities were negative for erythema, ecchymosis, and edema, neurologically intact with no peripheral pattern of sensory loss, normal reflexes, and normal vascular examination. Claimant ambulated with a left-sided antalgic gait, but station was normal. X rays showed a moderate loss of disc height and degenerative disc at L5-S1 but did not show any instability on flexion or extension. Lumbar lordosis was normal, and the other disc spaces were equally maintained. Dr. Clark reviewed Claimant's prior MRI, noting central disc bulging at L5-S1, but without any associated severe canal stenosis or foraminal stenosis. He assessed Claimant with low back pain, degenerative disc disease, and saw no role for surgical intervention. He recommended Claimant undergo an epidural steroid injection and physical therapy. (Tr. 25-26, 675-79).

Claimant returned to Dr. Aldrich for follow-up care in August of 2018. The ALJ noted that Dr. Aldrich recorded Claimant's BMI as 31. Claimant was doing well on medication, mood was stable, and she had no new complaints of pain. Ambulation, mood, effect, and memory were normal. She had normal tone and strength, pain with lumbar flexion and extension, tenderness to palpation over the lumbosacral spine, but normal gait and station. Sensation was intact. She was assessed with low back pain, generalized anxiety disorder, essential hypertension, and recurrent major depression in partial remission. (Tr. 27, 773-76). By October of 2018, Claimant's BMI was 30, she continued to do well on medication, mood was stable, and she had no new complaints. Examination findings remained the same as in August of 2018, except Claimant was assessed with idiopathic peripheral neuropathy in addition to low back pain and generalized anxiety disorder. (Tr. 27, 761-64).

In May of 2019, Claimant's BMI was 31, she continued to do well on medication, mood was stable, and she had no new complaints of pain. She could complete her activities of daily living without assistance. Claimant exhibited normal tone and motor strength but tenderness and limited range of motion. She had pain with lumbar flexion and extension and the lumbosacral spine was tender to palpation. Gait was described as irregular. Sensation was intact. Claimant was assessed with low back pain, opioid dependence, major depressive disorder, and mixed hyperlipidemia. (Tr. 27-28, 817-

15

20). In July of 2019, Claimant complained to Dr. Aldrich of worsening back pain. Dr. Aldrich noted that despite the increased pain, Claimant remained able to complete her activities of daily living without assistance. Although Claimant's ambulation was normal, her gait was described as irregular. Mood and effect were normal. Claimant continued to experience pain with lumbar flexion/extension and tenderness to palpation over the lumbosacral spine. Sensation was intact. She was assessed with mixed hyperlipidemia, obesity, low back pain, and major depressive disorder. (Tr. 28, 802-05).

The ALJ further considered the opinion evidence in the record, including opinions from the state agency reviewing physicians and psychologists. (Tr. 28-29, 79-88, 93-107, 108-22). He agreed with the reviewing physicians' opinions that Claimant could perform light work, but he determined Claimant's mental ability was more functionally limited than determined by the reviewing psychologists. (Tr. 28-29).

The ALJ considered Claimant's depression, migraine headaches, and idiopathic peripheral neuropathy along with those impairments that he determined were severe, including Claimant's obesity, when determining the RFC. He considered Claimant's MRI from June of 2018 when determining that Claimant could perform light work. *See Howard*, 379 F.3d at 949 ("[T]he ALJ . . . is charged with determining a claimant's RFC from the medical

16

record."). No error is found, as the ALJ's decision demonstrates that he did not simply disregard these conditions when considering the RFC. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax*, 489 F.3d at 1084.

### Step-Five Determination

Claimant argues that if the ALJ had included certain limitations in the RFC and included them in the hypothetical questions to the VE, it would have precluded her from performing the jobs of housekeeping cleaner and small products assembler.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The Court finds no error in the ALJ's step five determination. As discussed herein, the ALJ appropriately considered Claimant's impairments in the RFC, and the hypothetical questions to the VE included those limitations found to exist by the ALJ. *See Qualls*

*v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 19th day of January, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE